# Exhibit 3

Order on Motion to Dismiss
No. 1:16-cv-00607
(M.D.N.C. April 26, 2017)

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ROANOKE RIVER BASIN ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16cv607 |
| | ) | |
| DUKE ENERGY PROGRESS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Roanoke River Basin Association ("the Association") brings this citizen enforcement action against Duke Energy Progress, LLC ("Duke Energy"), alleging violations of the Clean Water Act of 1972 ("CWA" or "Act") at the Mayo Steam Station, a coal-fired electricity generation plant in Roxboro, Person County, North Carolina (the "Mayo Plant"). Duke Energy filed a Motion to Dismiss Plaintiff's Complaint With Prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8.) For the reasons that follow, the Court grants in part and denies in part Duke Energy's motion.

I. **CLEAN WATER ACT OVERVIEW**

The Clean Water Act prohibits "the discharge of any pollutant by any person" into the waters of the United States, except as in compliance with certain provisions of the Act. 33 U.S.C. § 1311(a).[1] To comply with the Act, pollutant dischargers can obtain a permit through

---

[1] The CWA prohibits the discharge of pollutants to "navigable waters," see 33 U.S.C. § 1311(a), 1362(12)(A), which are defined as "the waters of the United States," id. § 1362(7).

the National Pollutant Discharge Elimination System ("NPDES") permit program, administered by the Environmental Protection Agency ("EPA") and authorized states. See id. § 1342(a)–(b). The agency responsible for issuing NPDES permits in North Carolina is the North Carolina Department of Environmental Quality ("DEQ"). See N.C. Gen. Stat. § 143B-282(a)(1)(a). "NPDES permits impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 174 (2000). "Noncompliance with a permit constitutes a violation of the Act." Id.; see 40 C.F.R. § 122.41(a).

"[P]rimary responsibility for enforcement [of the CWA] rests with the state and federal governments . . . ." Piney Run Pres. Ass'n v. Cty. Comm'rs, 523 F.3d 453, 456 (4th Cir. 2008) (quoting Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs, 504 F.3d 634, 637 (6th Cir. 2007)). "[A] second level of enforcement," is provided through the Act's citizen suit provision, 33 U.S.C. § 1365, which authorizes citizens "to bring suit against any NPDES permit holder who has allegedly violated its permit." Piney Run, 523 F.3d at 456 (quoting Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 152 (4th Cir. 2000) (en banc)). Citizen suits are meant "to supplement rather than to supplant governmental action," allowing citizens "to abate pollution when the government cannot or will not command compliance." Id. (quoting Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60, 62 (1987)). "Congress made clear that citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests." Friends of the Earth v. Carey, 535 F.2d 165, 172 (2d Cir. 1976). Citizen suits, however, are barred if the EPA or state is "diligently prosecuting" a civil or criminal

2

enforcement action against the alleged violator in federal or state court.  33 U.S.C. § 1365(b)(1)(B).

## II. BACKGROUND

Duke Energy is engaged in the generation, transmission, distribution and sale of electricity, and runs and operates the Mayo Plant.  (ECF No. 1 ¶ 32.)  "In 1978, Duke Energy built a 110-foot dam over Crutchfield Branch[2] to impound water and create a pit for storing coal ash and other wastes from the Mayo Plant."  (Id. ¶ 38.)  A 144-acre lagoon was created by the damming of Crutchfield Branch.  (Id. ¶ 40.)  "For nearly forty years, Duke Energy has discharged coal ash into the pit, along with other wastewater streams and waste from burning coal, including coal pile runoff, stormwater runoff, cooling tower blowdown, reverse osmosis wastewater, plant area wash down wastewater, equipment heat exchanger water, and treated domestic wastewater or sewage."  (Id. ¶ 41.)

Duke Energy operates the coal ash lagoon under NPDES permit #NC0038377, issued by DEQ's predecessor.[3]  (Id. ¶ 44.)  "The NPDES Permit allows Duke Energy to discharge treated wastewater from the coal ash pit only from a designated outfall, a canal flowing into Mayo Lake."  (Id. ¶ 45.)  The Permit does not allow any "other discharge into waters of the State or of the United States . . . including groundwater, rivers, streams, or lakes."  (Id.)  Further, "the Permit expressly prohibits Duke Energy from directly discharging from the coal

---

[2] "Crutchfield Branch is a navigable water and a water of the United States and of North Carolina.  It flows through the ash pond dam into the Roanoke River Basin, through the states of Virginia and North Carolina."  (Id. ¶ 39.)

[3] DEQ's predecessor was the Department of Environment and Natural Resources ("DENR"). (ECF No. 9 at 4.)

3

ash lagoon into Crutchfield Branch." (Id.) On August 16, 2013, DEQ's predecessor, DENR, filed an action against Duke Energy in the General Court of Justice, Superior Court Division, in Wake County, Case No. 13-CVS-011032 (the "state action" or "state proceeding"), alleging violations of state groundwater laws and unlawful seeps by Duke Energy at the Mayo coal ash lagoon, as well as at five (5) other sites. (See ECF No. 1-3.) The Association, a citizen conservation group, was allowed to intervene in the state action in October 2014 with "full rights of participation" with respect to the Mayo Plant. (ECF No. 9-5 ¶ 3.)

On June 13, 2016, the Association filed suit in this Court seeking "to enforce permit requirements and CWA violations that DEQ's Complaint does not seek to enforce." (ECF No. 1 ¶ 12.) The Complaint alleges that Duke Energy has violated the Mayo NPDES permit and the CWA by (1) making discharges from unauthorized point sources into waters of the United States ("Claim I"); (2) releasing removed substances, including solids, sludges, and other pollutants, into state waters and navigable waters of the United States ("Claim II"); (3) violating prohibitions in its permit against direct and indirect discharges to Crutchfield Branch ("Claims III and IV"); (4) releasing unauthorized and prohibited discharges through hydrologic flow of groundwater into surface waters ("Claim V"); and (5) violating requirements in the Mayo permit to properly operate and maintain the Mayo Plant's wastewater facility and systems ("Claim VI"). (Id. ¶¶ 67–94.)

Duke Energy moves to dismiss the Association's claims under the diligent prosecution bar for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failure to state a claim, pursuant to Rule 12(b)(6). (ECF No. 8.)

4

## III. STANDARDS OF REVIEW

### A. Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

Subject-matter jurisdiction relates to the court's power to hear a case. Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012) (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)). A motion under Rule 12(b)(1), which governs dismissal for lack of subject-matter jurisdiction, raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." Id. at 452. The burden of establishing subject-matter jurisdiction is on the plaintiff. Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). When evaluating a Rule 12(b)(1) motion to dismiss, the court may consider evidence outside the pleadings and should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)). Once the court determines it lacks subject-matter jurisdiction over a claim, it must dismiss that claim. See Jones v. Calvert Grp., Ltd., 551 F.3d 297, 301 (4th Cir. 2009). Irrespective of whether the parties raise the issue of subject-matter jurisdiction, the court has an independent obligation to ensure that it possesses jurisdiction before proceeding. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005).

### B. Rule 12(b)(6): Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a

5

Case 1:17-cv-01097-LCB-JLW   Document 13   Filed 12/25/17   Page 6 of 17
Case 1:16-cv-00607-LCB-JLW   Document 27   Filed 04/26/17   Page 5 of 16

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## IV. DISCUSSION

Duke Energy argues in its motion to dismiss that the Association's claims are barred because DEQ is diligently prosecuting the same claims in the state action. (See generally ECF No. 9.) The Association argues, in response, that "[this] federal suit seeks to enforce broader and more stringent requirements than does DEQ's state action." (ECF No. 17 at 5.) Further, according to the Association, "DEQ took no steps to diligently prosecute its state action in the more than six months between this Court's ruling in [Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC], 141 F. Supp. 3d 428 (M.D.N.C. 2015), and the filing of this complaint." (Id. at 6.)

### A. The Diligent Prosecution Bar

The CWA's citizen suit provision authorizes any citizen to commence a civil action against any person alleged to be in violation of "an effluent standard or limitation" under the CWA or "an order . . . with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). The same provision prohibits citizens from filing suit when the EPA or state "has commenced and is diligently prosecuting" a judicial action "to require compliance with the standard, limitation, or order." Id. § 1365(b)(1)(B). Whether the diligent prosecution bar is a

6

Case 1:17-cv-01097-LCB-JLW   Document 13   Filed 12/25/17   Page 7 of 17
Case 1:16-cv-00607-LCB-JLW   Document 27   Filed 04/26/17   Page 6 of 16

jurisdictional issue remains an open question. The Fifth Circuit has concluded that the bar is not jurisdictional. La. Envtl. Action Network v. City of Baton Rouge, 677 F.3d 737, 749 (5th Cir. 2012). The Fourth Circuit has not directly addressed the issue, though it has affirmed a district court's evaluation of the diligent prosecution bar under Rule 12(b)(1). See Piney Run, 523 F.3d at 459–61. It has also described the bar as "an exception to the jurisdiction granted" in § 1365(a). Id. at 456 (quoting Chesapeake Bay Found. v. Am. Recovery Co., 769 F.2d 207, 208 (4th Cir. 1985) (per curiam)). The Court will evaluate Duke Energy's diligent prosecution argument under Rule 12(b)(1) for lack of subject-matter jurisdiction.

    1. <u>Comparison of State and Federal Enforcement Actions</u>

For an agency lawsuit to bar a citizen suit based on diligent prosecution, the agency suit must seek to enforce the same standard, limitation, or order as the citizen suit. See Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 728 F.3d 868, 874 (9th Cir. 2013) ("Subsection (b)'s reference to 'the' clean-water standard makes clear that it must be the same standard, limitation, or order that is the subject of the citizen suit under subsection (a)."). Thus, the first question in a diligent prosecution inquiry is whether, at the time the citizen suit was filed, the EPA or state had commenced a judicial action to enforce the same standard, limitation, or order as the citizen suit. Conn. Fund for the Env't v. Contract Plating Co., 631 F. Supp. 1291, 1293 (D. Conn. 1986). If so, the next question is whether the EPA or state was "diligently prosecuting" its enforcement action at the time the citizen suit was filed. Id.

To determine whether an agency enforcement action and citizen suit seek to enforce the same standards, limitations, or orders, "the court may rely primarily on a comparison of the pleadings filed in the two actions." Id.; see Sierra Club v. City & Cty. of Honolulu, No.

7

04-00463 DAE-BMK, 2008 WL 1968317, at *5 (D. Haw. May 7, 2008) (comparing the complaints filed in the agency suit and the citizen suit). The comparison need not reveal identical claims for the actions to cover the same standards and limitations. Citizen suits seeking to enforce the same standards and limitations as an agency suit have been barred even when they alleged violations occurring at more locations and at different times than those alleged in the agency suit. See, e.g., Karr v. Hefner, 475 F.3d 1192, 1199 (10th Cir. 2007) (rejecting the plaintiffs' argument that an EPA enforcement action was not diligent because it addressed violations at only 19 to 21 of the 37 well locations listed in the plaintiffs' complaint); Sierra Club, 2008 WL 1968317, at *5 (concluding two suits covered the same standard or limitation even though the citizen suit alleged violations occurring several years after those covered in the agency suit). Citizen suits have also been barred when seeking to enforce specific permit conditions that fall within the scope of a broader agency enforcement action. See, e.g., Cmty. of Cambridge Envtl. Health & Cmty. Dev. Grp. v. City of Cambridge, 115 F. Supp. 2d 550, 556 (D. Md. 2000) (finding that an agency suit addressing all sewage overflows covered the same issues as a citizen suit alleging sewage overflows during dry weather, in violation of a NPDES permit provision specifically prohibiting "discharges during dry weather"). The diligent prosecution bar does not apply, however, if the agency suit and citizen suit seek to enforce different standards and limitations of the same NPDES permit. See Frilling v. Vill. of Anna, 924 F. Supp. 821, 837–38 (S.D. Ohio 1996) (concluding that an agency enforcement of two NPDES permit parameters "does not prevent Plaintiffs from seeking to enforce [four different parameters] through a citizen suit"); cf. Md. Waste Coal. v. SCM Corp., 616 F. Supp. 1474, 1483 (D. Md. 1985) (explaining, in the Clean Air Act context, that "[i]n a

8

Case 1:17-cv-01097-LCB-JLW   Document 1-3   Filed 12/05/17   Page 9 of 17
Case 1:16-cv-00607-LCB-JLW   Document 27   Filed 04/26/17   Page 8 of 16

situation where a single emission source violates multiple standards, limitations or orders, it would defeat the purpose of the citizen suit provision to hold that EPA's enforcement of a single standard against the emission source would bar private enforcement of other standards, limitations or orders applicable to the same emission source").

Here, a comparison of the complaint in the state action and the Association's federal complaint reveals overlapping standards and limitations with respect to Claims I, III, IV, and V. DEQ has not sought to enforce the standards or limitations associated with Claims II and VI of the Association's Complaint in the state action and thus the diligent prosecution bar does not preclude the Association from pursuing these claims. As to Claim II,[4] the Court is unpersuaded by Duke Energy's attempt to characterize the Association's removed substances claim as another unpermitted seep claim. The Removed Substances provision in the NPDES permit provides, in relevant part, that "[s]olids, sludges, filter backwash, or other pollutants removed in the course of treatment or control of wastewaters shall be utilized/disposed of . . . in a manner such as to prevent any pollutant from such materials from entering waters of the State or navigable waters of the United States." (ECF No. 1-5 at 46.) As in Yadkin, the Court finds that this provision "aims to ensure the integrity of wastewater treatment and control systems," 141 F. Supp. 3d at 446, and, thus, addresses a different standard or limitation than the unpermitted seep or unauthorized discharge claim.

Having determined that Claims I, III, IV and V contain standards and limitations that overlap with the state action, the Court must examine whether DEQ is diligently prosecuting

---

[4] See infra pp. 15–16 for the Court's discussion of Claim VI in the context of the Court's analysis under Rule 12(b)(6).

9

its state enforcement action. If the state action is being diligently prosecuted as to these claims, the Association will be barred from pursuing these claims in this Court. See 33 U.S.C. § 1365(b); Piney Run, 523 F.3d at 456.

    2. DEQ's Prosecution Effort

"A CWA enforcement prosecution will ordinarily be considered 'diligent' if the judicial action 'is capable of requiring compliance with the Act and is in good faith calculated to do so.'" Piney Run, 523 F.3d at 459 (quoting Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743, 760 (7th Cir. 2004)). "[D]iligence is presumed," id., and "[t]he burden for proving non-diligence is heavy," Ohio Valley Envtl. Coal., Inc. v. Hobet Mining, LLC, No. 3:08-0088, 2008 WL 5377799, at *4 (S.D. W. Va. Dec. 18, 2008). See Karr, 475 F.3d at 1198 ("Citizen-plaintiffs must meet a high standard to demonstrate that [the state] has failed to prosecute a violation diligently."). To overcome this presumption, the citizen-plaintiff can demonstrate "a pattern of conduct in [the state's] prosecution of the defendant that could be considered dilatory, collusive or otherwise in bad faith." Conn. Fund, 631 F. Supp. at 1293. The deference courts owe to the agency prosecution, however, is not unlimited. Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co., 808 F. Supp. 2d 868, 884 (S.D. W. Va. 2011). "[A] diligent prosecution analysis requires more than mere acceptance at face value of the potentially self-serving statements of a state agency and the violator." Id. (alteration in original) (quoting Friends of Milwaukee's Rivers, 382 F.3d at 760). It requires that the agency "try, diligently[,]" to achieve compliance. Id. (alteration in original) (quoting Friends of Milwaukee's Rivers, 382 F.3d at 759).

10

In evaluating diligence, "the court may rely primarily on objective evidence from the court files with respect to the status of the state's suit at the time that the citizens' suit was commenced and the prospects that the state suit would proceed expeditiously to a final resolution." Conn. Fund, 631 F. Supp. at 1293. Congress also envisioned that courts would consider citizen suits "against the background of the agency action" to assess the adequacy of the agency action. S. Rep. No. 92-414, at 80 (1971) as reprinted in 1972 U.S.C.C.A.N. 3668, 3746.

The Association contends that, in the 18 months preceding the filing of its federal Complaint, DEQ has failed to diligently prosecute its claims in the state proceeding. (ECF No. 17 at 6, 14–17.) Duke Energy, on the other hand, points to a number of actions that it contends demonstrates DEQ's diligent prosecution of the case at the time the Association filed this action. (ECF No. 9 at 11–13.) Duke Energy also asserts that "DEQ has taken heed of the Court's admonishment in the Yadkin decision, and reinvigorated its state enforcement action in the months leading up to and after [the Association] filing its complaint." (ECF No. 18 at 5.)

As previously stated, the state action was filed on August 16, 2013, and this action was filed almost three years later, on June 13, 2016. In that time, based on a review of the record before the Court as well as the state court docket sheet,[5] DEQ's enforcement action did not lie dormant; rather, the state enforcement action had been progressing forward. Specifically,

---

[5] The Court takes judicial notice of the docket sheet in DEQ's state enforcement action. See Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 397 (4th Cir. 2006) (per curiam) (stating that a district court "may clearly take judicial notice" of public records, including state court records).

11

at the time the Association filed its federal Complaint, an Initial Case Management Order had been entered on September 9, 2014, and subsequent Case Management Orders were entered on February 5, 2015, May 29, 2015, August 27, 2015, September 22, 2015, and March 31, 2016. (ECF Nos. 9-9, 9-10, 9-12, 9-13.) Among other things, these Case Management Orders set deadlines for the completion of discovery. (Id.) Further, it is undisputed that the parties had also begun to engage in discovery, including taking depositions, as well as serving discovery requests, discovery responses, and expert witness designations. (ECF Nos. 9-14–9-20.) In addition, a Stipulation Regarding Roanoke River Basin Association's Motion to Intervene[6] was entered on October 17, 2014. (ECF No. 9-5.) The Stipulation granted the Association permission to intervene in the state action with "full rights of participation as a party" as to matters involving the Mayo Plant. (Id. ¶ 3.) See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 890 F. Supp. 470, 489–90 (D.S.C. 1995) (citing "the absence of a meaningful opportunity for the citizen plaintiffs to intervene," among other things, as a reason for finding lack of diligent prosecution).

Despite the activity described above, the Association contends, in part, that "[a]fter 3 years of litigation, DEQ has not filed any motion to compel Duke Energy to take any action at Mayo." (ECF No. 17 at 7.) However, the fact that DEQ has chosen to prosecute its case in a manner different from what the Association would prefer does not overcome the required presumption of diligence. See Piney Run, 523 F.3d at 459 (explaining that the diligent prosecution bar "does not require government prosecution to be far-reaching or zealous,"

---

[6] Duke Energy and the Association were parties to this Stipulation; DEQ was not a party. (ECF No. 9-5.)

Case 1:16-cv-00607-LCB-JLW Document 27 Filed 04/26/17 Page 12 of 16
Case 1:17-cv-01097-LCB-JLW Document 1-3 Filed 12/05/17 Page 13 of 17

thus, a lack of diligent prosecution is not shown merely because an "agency's prosecution strategy is less aggressive than [the citizen-plaintiff] would like" (quoting Karr, 475 F.3d at 1197)). The role of the Court is not to second-guess strategic litigation decisions employed by the agency in prosecuting its enforcement action. See Karr, 475 F.3d at 1197 (stating that "an agency's prosecutorial strategy [need not] coincide with that of the citizen-plaintiff;" and further, that "[s]econd-guessing of the EPA's assessment of an appropriate remedy . . . fails to respect the statute's careful distribution of enforcement authority among the federal EPA, the States and private citizens, all of which permit citizens to act where the EPA has 'failed' to do so, not where the EPA has acted but not acted aggressively enough in the citizens' view" (quoting Ellis v. Gallatin Steel Co., 390 F.3d 461, 477 (6th Cir. 2004))). Additionally, because the Association has "full rights of participation as a party" in the state action regarding matters pertaining to the Mayo Plant, (ECF No. 9-5 ¶ 3), the Association could file any motion or take any action it deems necessary to ensure that the state action is proceeding expeditiously to a resolution.

The Association further argues that DEQ has attempted to shield Duke Energy and impede the state action by, among other things: (i) moving to stay the state court action on August 18, 2015; (ii) opposing Duke Energy's summary judgment motion requiring coal ash cleanups at several of its sites; (iii) entering into an administrative Settlement Agreement with Duke Energy in an effort "to deprive the state court of jurisdiction;" and (iv) issuing a draft permit to authorize the illegal discharges at the Mayo Plant. (ECF No. 17 at 7–8, 14.) The Court is troubled by these alleged actions, particularly in light of the concerns expressed by the state court judge who referred to the DEQ-Duke Energy Settlement Agreement as

13

Case 1:17-cv-01097-LCB-JLW   Document 1-3   Filed 12/05/17   Page 14 of 17
Case 1:16-cv-00607-LCB-JLW   Document 27   Filed 04/26/17   Page 13 of 16

"disturbing." (ECF No. 17 at 7 & n.2). However, while this Court has serious concerns regarding DEQ's enforcement objective as to the alleged violations at Mayo, the Association has not presented sufficient evidence from which this Court can find as a matter of law that DEQ's conduct rises to the level of being dilatory, collusive, or in bad faith.

The Association also argues that at the time its federal complaint was filed, the activity in the state action was primarily administrative. (ECF No. 17 at 14–15.) Yet, the Association has not cited, nor has this Court found, authority to support the proposition that the type of activity deemed administrative by the Association (i.e., entry of case management orders and the parties' filing of a case management report as required by the court), is irrelevant to the Court's diligence analysis. The Court normally considers the status of the state action "as of the time of the filing of [the federal] complaint." Piney Run, 523 F.3d at 456 (quoting Chesapeake Bay Found., 769 F.2d at 208). In so doing, the record before the Court reflects that, at the time the federal complaint was filed, the state action had been progressing toward resolution, albeit primarily due to the actions of the state court judge.[7] Thus, the Court cannot find that the state action is not capable of requiring compliance with the CWA, specifically related to the overlapping claims. The Court, therefore, concludes that the Association has failed to meet its high burden of overcoming the presumption of diligence afforded DEQ. Accordingly, DEQ's state enforcement action bars the Association from pursuing Claims I, III, IV, and V in this citizen suit.

---

[7] For example, the state court judge: (i) denied DEQ's motion to stay the state action, (ECF No. 17-3 at 17–18); (ii) granted, despite DEQ's opposition, Duke Energy's motion for partial summary judgment requiring coal ash cleanups at several Duke Energy plants, (ECF No. 9-22); and (iii) rejected the proposed administrative Settlement Agreement between DEQ and Duke Energy, (see ECF No. 17 at 7 & n.2).

### B. Motion to Dismiss Claim VI under Rule 12(b)(6)

Of the two claims that survive the diligent prosecution bar, Claims II and VI, Duke Energy seeks a Rule 12(b)(6) dismissal of Claim VI, <u>i.e.</u>, the Association's facilities operation and maintenance claim. (ECF No. 9 at 18–20.) Duke Energy contends that this claim should be dismissed pursuant to Rule 12(b)(6) because "it is especially light on factual allegations to support it." (ECF No. 9 at 19.) The Court disagrees.

As alleged in the Association's complaint, Part 1C, Section C.1 of the NPDES permit provides: "[t]he Permittee shall at all times properly operate and maintain all facilities and systems of treatment and control . . . which are installed or used by the permittee to achieve compliance with the conditions of this individual permit." (ECF No. 1-5, Part 1C § C.1; ECF No. 1 ¶ 92.) Part II, Section C.2 provides: "[t]he Permittee shall at all times provide the operation and maintenance resources necessary to operate the existing facilities at optimum efficiency. The Permittee shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the Permittee to achieve compliance with the conditions of this permit." (ECF No. 1-5, Part II § C.2; ECF No. 1 ¶ 92.) The Association then references the violations of the permit outlined throughout the Complaint to support its claim, and specifically states that Duke Energy's "wastewater treatment facility and systems leak, malfunction, pollute, and otherwise violate the conditions of the permit." (ECF No. 1 ¶ 93.) At this stage of the litigation, the Association has alleged sufficient facts to support a plausible claim for relief. <u>See</u> <u>Twombly</u>, 550 U.S. at 555 (stating that while a complaint must contain more than "labels and conclusions," in order to survive a Rule 12(b)(6) motion to dismiss, "a complaint . . . does not

15

need detailed factual allegations"). Duke Energy's arguments in support of its motion for dismissal under Rule 12(b)(6) appear to address whether the Association can sustain its claim, rather than whether a claim has been plausibly alleged. The Court will, therefore, deny Duke Energy's motion to dismiss Claim VI for failure to state a claim.

## V. CONCLUSION

This Court lacks subject matter jurisdiction with respect to Claims I, III, IV and V of the Association's Complaint because these claims address the same standards as those in the state action, and the Association has failed to sustain its burden of showing that these claims are not being diligently prosecuted. Consequently, these claims must be dismissed. Further, because Claims II and VI are not addressed in the state action, and because Claim VI states a plausible claim for relief, these claims survive Duke Energy's motion to dismiss.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Duke Energy's Motion to Dismiss Plaintiff's Complaint with Prejudice (ECF No. 8) is GRANTED IN PART and DENIED IN PART. Duke Energy's motion is GRANTED as to Claims I, III, IV and V which are DISMISSED WITHOUT PREJUDICE, and the motion is DENIED as to Claims II and VI.

This, the 26th day of April, 2017.

                                       /s/ Loretta C. Biggs
                                     United States District Judge

16

Case 1:17-cv-01097-LCB-JLW Document 1-3 Filed 12/05/17 Page 17 of 17
Case 1:16-cv-00607-LCB-JLW Document 27 Filed 04/26/17 Page 16 of 16