# Exhibit 9
## Sutton Settlement Agreement
## September 29, 2015

# SETTLEMENT AGREEMENT

This is an AGREEMENT TO SETTLE AND FOR RELEASE OF CLAIMS (the "Agreement") made and entered by and among North Carolina Department of Environmental Quality ("DEQ") (formerly known as the North Carolina Department of Environment and Natural Resources) on the one hand, and Duke Energy Carolinas, LLC and Duke Energy Progress, LLC (formerly known as Duke Energy Progress, Inc.) (together, "Duke Energy") on the other. DEQ and Duke Energy (collectively, the "Parties") agree to the following terms as a basis upon which to resolve the issues between them relating to alleged exceedances of state groundwater standards associated with coal ash facilities at sites operated by Duke Energy and its predecessors. By this Agreement, the undersigned settling Parties mutually agree to compromise, settle, and forgo all current, prior, and future claims related to exceedances of groundwater standards associated with coal ash facilities at Duke Energy's North Carolina facilities.

## I. RECITALS

WHEREAS, Duke Energy owns and operates the following facilities that are the subject of this Agreement (collectively, the "Duke Energy Sites"):

(1) the Allen Steam Station, located in Gaston County;

(2) the Asheville Steam Electric Generating Plant, located in Buncombe County (the "Asheville Plant");

(3) the Belews Creek Steam Station ("Belews Creek Plant"), located in Stokes County;

(4) the Buck Steam Station, located in Rowan County, which has been retired and is no longer used for the production of electricity;

1

(5) the Cape Fear Steam Electric Generating Plant, located in Chatham County, which has been retired and is no longer used for the production of electricity;

(6) the Dan River Steam Station, located in Rockingham County, which has been retired and is no longer used for the production of electricity;;

(7) the H.F. Lee Steam Electric Generating Plant ("H.F. Lee Plant"), located in Wayne County, which has been retired and is no longer used for the production of electricity;

(8) the Marshall Steam Station, located in Catawba County;

(9) the Mayo Steam Electric Generating Plant, located in Person County;

(10) the Riverbend Steam Station, located in Gaston County, which has been retired and is no longer used for the production of electricity;

(11) the Rogers Energy Complex (formerly Cliffside Steam Station), located in Cleveland and Rutherford Counties;

(12) the Roxboro Steam Electric Generating Plant in Person County;

(13) the L.V. Sutton Electric Plant, located in New Hanover County (the "Sutton Plant"), which has been retired and is no longer used for the production of electricity; and,

(14) the Weatherspoon Steam Electric Plant, located in Robeson County, which has been retired and is no longer used for the production of electricity.

WHEREAS, the National Pollutant Discharge Elimination System ("NPDES") Permits associated with the Duke Energy Sites contain requirements for Duke Energy to monitor groundwater at the Duke Energy Sites and to report the results to DEQ.

WHEREAS, Duke Energy has at all times complied with its groundwater monitoring and reporting requirements of its NPDES Permits for each of the Duke Energy Sites.

WHEREAS, on June 17, 2011, DEQ issued its "Policy for Compliance Evaluations of Long-Term Permitted Facilities with No Prior Groundwater Monitoring Requirement" (hereinafter, the "2011 Policy for Compliance Evaluations"). The 2011 Policy for Compliance Evaluations attempts to address the situation where groundwater monitoring indicates that a "long-term permitted facility" is out of compliance with the 2L standards, including the conditions under which DENR might issue a NOV to the affected facility.

WHEREAS, the 2011 Policy for Compliance Evaluations includes a detailed flow chart dictating the steps to be taken by DEQ should Duke Energy report any exceedance of North Carolina's groundwater standards as established pursuant to N.C.G.S. Chapter 143 and 15A N.C.A.C. Subchapter 2L at the Duke Energy Sites. Those steps include, but are not limited to: (1) verify the accuracy and significance of the results of the groundwater testing; (2) determine whether and to what extent the identified substance could be naturally occurring; and, (3) evaluate other possible sources of the identified substance.

WHEREAS, on August 26, 2014, DEQ sent Duke Energy a Notice of Violation based upon the exceedances of the State's groundwater standards reported to DEQ for the Sutton Plant (the "Sutton NOV").

WHEREAS, on September 20, 2014, the North Carolina Coal Ash Management Act ("CAMA") became effective. CAMA requires, among other actions, closure and dewatering of all ash ponds at the Duke Energy Sites and dictates, in detail, a procedure for assessing, monitoring and where appropriate, remediating groundwater quality in areas around coal ash

3

Case 1:17-cv-01097-LCB-JLW   Document 1-9   Filed 12/05/17   Page 4 of 14

impoundments in North Carolina that follows closely the procedures outlined in DEQ's 2011 Policy for Compliance Evaluations.

WHEREAS, Duke Energy submitted monitoring that showed exceedances of the State's groundwater standards at or beyond the compliance boundary at the Asheville Plant.

WHEREAS, on February 25, 2015, DEQ sent Duke Energy a Notice of Violation, this one based upon groundwater monitoring results reported to DEQ for the Asheville Plant (the "Asheville NOV").

WHEREAS, on March 10, 2015, DEQ assessed a $25.1 million civil penalty (the "Penalty Assessment") against Duke Energy based upon groundwater monitoring results reported to DEQ for the Sutton Plant.

WHEREAS, on April 9, 2015, Duke Energy filed a Petition for Contested Case at the North Carolina Office of Administrative Hearings, challenging the Penalty Assessment on multiple legal and factual grounds (the "Sutton Petition").

WHEREAS, the Parties have engaged in extensive discovery regarding the arguments raised in the Sutton Petition, during which the Parties have concluded that:

(1) The 2011 Policy for Compliance Evaluations is a current DEQ policy that was in effect at the time DEQ issued the Sutton NOV, the Asheville NOV and Penalty Assessment against Duke Energy;

(2) The 2011 Policy for Compliance Evaluations applies to each of the Duke Energy Sites listed above;

(3) The 2011 Policy for Compliance Evaluations states that as "long as the permittee is cooperative with the Division in taking the necessary steps to bring the facility into compliance, a notice of violation may not be necessary."

(4) During the discovery process internal e-mails and testimony by former DENR management demonstrate that, although not expressly stated in the 2011 Policy for Compliance Evaluations, the intent at the time the 2011 Policy for Compliance Evaluations

4

was that corrective action would precede any enforcement and would be in lieu of monetary penalties.

WHEREAS, DEQ further acknowledges that the procedures outlined in CAMA are specifically designed to address, and will address, the assessment and corrective action of alleged groundwater contamination associated with coal ash facilities at the Duke Energy Sites. In combination with the specific requirements of CAMA, DEQ further acknowledges that this Agreement fully addresses and resolves all issues related to groundwater contamination associated with coal ash facilities at the Duke Energy Sites, including all groundwater violations alleged in the state enforcement actions currently pending in Superior Court in Wake and Mecklenburg Counties.

WHEREAS, DEQ and Duke Energy have determined that it is in the best interest of the Parties, the environment, as well as the citizens of North Carolina, that they enter into a compromise settlement to avoid the time and expense of prolonged litigation so that the Parties may focus the same on the assessment and, if necessary, corrective action of alleged groundwater standard exceedances at the Duke Energy Sites.

WHEREAS, DEQ and Duke Energy have determined that the actions provided for in this Agreement and the provisions of CAMA represent the best course for prompt assessment and remediation of any alleged groundwater standard exceedances at the Duke Energy Sites.

NOW, THEREFORE, in consideration of the promises and covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, DEQ and Duke Energy agree to compromise, settle, and dismiss with prejudice all claims and causes of action related to alleged groundwater standard exceedances associated with coal ash facilities at the Duke Energy Sites upon fulfillment of the terms and conditions set forth below:

## II. DUKE ENERGY'S OBLIGATIONS

A. Consistent with 15A NCAC 2L .0106 Duke Energy shall implement accelerated remediation at the Sutton Plant on the following terms and conditions:

(1) Duke Energy will commence installation of extraction wells on the eastern portion of the Sutton Plant property where data show constituents associated with the ash basins at concentrations over the 2L standards ("Constituents of Interest") have migrated off site.

(2) Extraction wells will be used to pump the groundwater to arrest the off-site extent of the migration. The pumped groundwater will be treated as needed to meet standards and returned either to the ash basin or the discharge canal.

(3) This extraction and treatment system will be installed as soon as practicable following receipt of all permits and approvals from DEQ, the issuance of which will occur as soon as practicable. This accelerated groundwater remediation is in addition to and shall be performed concurrent with the coal ash impoundment closure obligations set forth in CAMA.

(4) The extraction wells shall remain operational until such time as Duke Energy demonstrates through sampling, analysis, and appropriate modeling, and subject to DEQ's written concurrence, that off-property constituents of interest have been remediated to 2L Standards and there is no reasonable potential for future off-site migration.

(5) As part of accelerated remediation, DEQ agrees that dry ash can be removed from the head of the ash basins under a construction storm water permit and shall expedite such construction storm water permit in order for Duke Energy to commence the removal of ash which is the source of the constituents of interest from the Sutton Plant. DEQ will issue construction storm water permits for Sutton plant within 10 days of receiving Duke Energy's complete application. Only dry ash from the head of the ash basins will be removed with no impact to wastewater treatment or water levels in the basins. DEQ shall use its best efforts to complete the process of the issuance of the NPDES permit modification at the Sutton Plant to allow for the removal of water and ash beyond the areas covered under the construction storm water permit from the Sutton Plant.

B. Consistent with 15A NCAC 2L .0106 Duke Energy shall implement accelerated remediation at the Asheville Plant, Belews Creek Plant, and H.F. Lee Plant, which are the only three other Duke Energy facilities that demonstrated offsite groundwater impacts in isolated areas that are not impacting private wells in the Comprehensive Site Assessments conducted

6

Case 1:17-cv-01097-LCB-JLW Document 1-9 Filed 12/05/17 Page 7 of 14

pursuant to CAMA. Such accelerated remediation shall be tailored to each facility's unique characteristics.

C. Petitioner agrees to pay to Respondent the sum of seven million dollars ($7,000,000.00) (the "Payment") in full settlement of all current, prior, and future claims related to exceedances of groundwater standards associated with coal ash facilities at Duke Energy's North Carolina facilities. The Payment shall be made by check and made payable to the North Carolina Department of Environmental Quality and delivered to the following address:

> North Carolina Department of Environmental Quality
> Sam M. Hayes
> 217 West Jones Street
> Raleigh, North Carolina 27603

The Payment shall be made within thirty (30) days of the receipt by Duke Energy of the acknowledgment described in part III.A. below. The Payment shall be accepted and acknowledged in writing by DEQ as "Payment In Full" in this matter within thirty-five (35) days of the execution of this Agreement.

D. Within fifteen (15) days of the receipt by Duke Energy of the acknowledgment described in part III.A. below, Duke Energy shall file and serve a Voluntary Withdrawal with Prejudice of the Sutton Petition, Case No. 15-EHR-02581, the Petition for Contested Case Hearing filed by Duke Energy related to the Notice of Regulatory Requirements dated July 9, 2014, Case No. 14-EHR-09631, and the Petition for Contested Case Hearing filed by Duke Energy related to the determination that Sutton Lake is waters of state, Case No. 15-EHR-04922.

## III. DEQ'S OBLIGATIONS

A. Within five (5) days of the execution of this Agreement, DEQ shall communicate to Duke Energy, in writing, its withdrawal and rescission, with prejudice, of the Sutton NOV, the Sutton NORR, the Asheville NOV, and the Penalty Assessment.

B. DEQ shall not issue any further Notices of Violation, Notices of Regulatory Requirements, other similar notices, unilateral orders or civil penalty assessments to, file any judicial action against, or take any administrative, regulatory, or other enforcement actions against Duke Energy based on or in any way related to any previous or future groundwater monitoring results or alleged groundwater conditions at any of the coal ash facilities at any of the Duke Energy Sites, as long as Duke Energy continues to be in substantial compliance with CAMA requirements as they relate to groundwater assessment and remediation and closure of ash basins, including corrective action plans. DEQ also shall not issue Notices of Violation, Notices of Regulatory Requirements, other similar notices, unilateral orders or civil penalty assessments to, file any judicial action against, or take any administrative, regulatory, or other enforcement actions against Duke Energy based on or in any way related to the classification of Sutton Lake as waters of the State as set forth in paragraph II.D. above.

C. Except as necessary under CAMA or unless ordered or required to change, alter, modify, or amend by a court of competent jurisdiction or by the enactment or amendment of any applicable federal or state statute, rule, or regulation, or in response to an immediate threat to public health, DEQ agrees to not materially modify the groundwater monitoring terms in the existing NPDES Permits and in issuing future NPDES Permits for the Duke Energy Sites. For purposes of this provision "immediate threat to public health" shall mean circumstances beyond exceedances of the applicable provisions of 15A N.C.A.C. Subchapter 2L (the " 2L Standards"). Except as provided in part III.B above, DEQ further agrees to limit the

8

use of the results of any groundwater monitoring required by NPDES permits or CAMA for the determination of prioritizing the coal ash impoundments and approving closure plans. This provision shall not modify the rights, duties and obligations of DEQ or Duke Energy pursuant to CAMA.

  D. DEQ agrees that applicable, enforceable groundwater quality standards and naturally occurring (also known as "background") concentrations shall only be those established pursuant to applicable provisions of the " 2L Standards."

  E. Duke Energy and DEQ acknowledge that Duke Energy has been receiving and may in the future continue to receive concerns from individuals or local governments regarding alleged adverse impacts to groundwater from beneficial re-use activities conducted under Distribution of Residual Solids Permits, Ash Reuse Permits or similar permits issued by DEQ or its predecessors authorizing ash reuse programs. Except as otherwise provided by CAMA and the Distribution of Residual Solids permits, Ash Reuse Permits, or similar permits issued by DEQ, DEQ shall be responsible for investigating (including, when necessary, collecting and analyzing groundwater samples) and respond to all such concerns and shall notify Duke Energy of all such responses.

  F. DEQ will issue construction storm water permits for Sutton plant within 10 days of receiving Duke Energy's complete application. Only dry ash from the head of the ash basins will be removed with no impact to wastewater treatment or water levels in the basins. DEQ shall use its best efforts to complete the process of the issuance of the NPDES permit modification at the Sutton Plant to allow for the removal of water and ash beyond the areas covered under the construction storm water permit from the Sutton Plant.

9

Case 1:17-cv-01097-LCB-JLW   Document 1-9   Filed 12/05/17   Page 10 of 14

## IV. LEGAL PROVISIONS

A. <u>Binding Nature of Agreement.</u> The Parties represent and agree that the persons executing this Agreement have full and sufficient authority to sign and agree to be bound by the Agreement, and that this Agreement shall be binding upon DEQ and Duke Energy, and their successors and assigns, upon its execution by all Parties.

B. <u>No Admissions.</u> By entering into this Agreement, the Parties to this Agreement make no admission of liability, violation, or wrongdoing whatsoever, by itself, any of its affiliated companies, or any or its or their present or former officers, directors, employees, or agents.

C. <u>Attorney's Fees, Costs, and Expenses.</u> The Parties agree to bear their own respective attorney's fees, costs, and other expenses that have been incurred in connection with any stage of the state enforcement actions or Duke Energy's Petition for Contested Case related to the Penalty Assessment.

D. <u>Governing Law and Interpretation.</u> This Agreement shall be governed and interpreted in accordance with the laws of the State of North Carolina without regard to the conflict of laws provisions of North Carolina or any other state, and any provision herein that violates a statute or rule shall be void and unenforceable.

E. <u>Enforceability and Remedies for Breach.</u> The Parties stipulate and agree that this Agreement may be enforced in any court of competent jurisdiction in North Carolina, and that venue is appropriate in either Wake or Mecklenburg County. The Parties' sole and exclusive remedy for breach of this Agreement shall be an action for specific performance or injunction. In no event shall any Party be entitled to monetary damages for breach of this Agreement. In addition, no legal action for specific performance or injunction shall be brought or maintained

10

Case 1:17-cv-01097-LCB-JLW   Document 1-9   Filed 12/05/17   Page 11 of 14

until: (a) the non-breaching Party provides written notice to the allegedly breaching Party which explains with particularity the nature of the claimed breach, and (b) within thirty (30) days after receipt of said notice, the allegedly breaching Party fails to cure the claimed breach or, in the case of a claimed breach which cannot be reasonably remedied within a thirty (30) day period, the allegedly breaching Party fails to commence to cure the claimed breach within such thirty (30) day period, and thereafter diligently completes the activities reasonably necessary to remedy the claimed breach. This Agreement may be introduced as evidence in any action involving either or both Parties for the purpose of implementing its terms.

F. <u>Severability</u>. The invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any other provision; the invalid or unenforceable provision shall be stricken, without assessing damages or imposing penalties to either Party arising out of said provisions by any court of competent jurisdiction.

G. <u>Headings</u>. The headings used in this Agreement are for convenience of reference only and shall in no way define, limit, expand or otherwise affect the meaning of any provision of this Agreement.

H. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

I. <u>Amendment</u>. This Agreement may not be modified, altered or changed except in a written document that is signed by all Parties and that makes specific reference to this Agreement.

J. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the Parties, and fully supersedes any prior agreements or understandings between the Parties related

to the subject matter of this Agreement, including but not limited to alleged groundwater standard exceedances associated with coal ash ponds at the Duke Energy Sites.

  K. <u>Review and Signing</u>.  Each Party and counsel for each Party has reviewed this Agreement.  Accordingly, this Agreement shall be construed without regard to any presumption or other rule of construction requiring resolution of ambiguities against the drafting Party.

  L. The Parties agree that this Agreement does not affect in any way the Joint Enforcement Agreement between DEQ and U.S. EPA, the subject of which does not involve any alleged groundwater standard exceedances associated with coal ash facilities at the Duke Energy Sites.

[Signature page follows]

IN WITNESS WHEREOF, DEQ and Duke Energy, and their respective counsel have executed this Agreement as of September 29, 2015.

NORTH CAROLINA DEPARTMENT OF
ENVIRONMENTAL QUALITY

By: _____
Its: General Counsel
Date: 9/29/15

KILPATRICK TOWNSEND & STOCKTON LLP

By: _____
Its: _____
Date: 9/29/2015

DUKE ENERGY CAROLINAS, LLC

By: _____
Its: Associate General Counsel
Date: 9/29/2015

DUKE ENERGY PROGRESS, LLC

By: _____
Its: Associate General Counsel
Date: 9/29/2015

McGUIREWOODS LLP

By: _____
Date: 9/29/15

13